IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MONTE N. MERZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-07689 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| MICHAEL S. HELMSTETTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Monte N. Merz lent $496,000 to an Indiana car dealership pursuant to a loan agreement, promissory note, and guaranty by Defendant Scott Kindybalyk and Michael S. Helmstetter.[1] Merz never recouped any of the loan amount—not from the car dealership and not from either guarantor. Merz subsequently brought this lawsuit, claiming breach of the guaranty agreement and seeking repayment of his loan plus interest. Merz now seeks summary judgment against Kindybalyk, the only remaining defendant in the matter. (Dkt. No. 43.) In addition, Kindybalyk has filed a motion to strike an affidavit submitted by Merz in support of his summary judgment motion. (Dkt. No. 47.) For the reasons stated below, Merz's motion for summary judgment is granted, and Kindybalyk's motion to strike is denied as moot.

**BACKGROUND**

For purposes of the present summary judgment motion, the Court views all evidence and reasonable inferences therefrom "in the light most favorable to the nonmoving party." *Scott v. Edinburg*, 346 F.3d 752, 755 (7th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] The Court previously granted Merz's motion to dismiss his claim against Helmstetter voluntarily in light of Helmstetter's bankruptcy petition. (9/21/2020 Order, Dkt. No. 33.) All claims against Helmstetter were dismissed without prejudice. (*Id.*)

242, 255 (1986) and *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003)). The following summary of the facts is drawn from the parties' submissions under Local Rule 56.1.

Kindybalyk and Helmstetter worked together in the car dealership business beginning in the early or mid-2000s. (Def.'s Resp. to Pl.'s Statement of Material Facts ("DRPSF") ¶ 5, Dkt. No. 50.) Among other companies, Helmstetter organized a Nissan car dealership under the name New City Auto Group, Inc. ("New City Auto") (*Id.* ¶ 9.) Upon organizing New City Auto, Helmstetter informed Kindybalyk that he would "be in the business" and would serve as New City Auto's Vice President. (*Id.*) Kindybalyk denies that he was made part of New City Auto Group or employed there as Vice President, but he does not support his position with evidence from the record.[2]

In 2017, New City Auto was seeking financing for its business. (*Id.* ¶ 10.) New City Auto's accountant introduced Helmstetter and Kindybalyk to Adam Wimmer, whose company was Painted Sky Partners, LLC ("PSP"). Helmstetter, Kindybalyk, and Wimmer met on a few occasions to discuss financing or socialize. (*Id.*; Pl.'s Statement of Material Facts ("PSMF"), Ex. 4, Kindybalyk Dep. at 25:2–26:23, Dkt. No. 45-4.)

On January 4, 2018, Kindybalyk emailed Wimmer an engagement agreement from his email address, skindy@live.com. (*Id.* ¶ 11.) The engagement agreement stated that New City Auto was retaining PSP as its "exclusive investment banker advisor." (PSMF, Ex. 4, Kindybalyk

---

[2] The Northern District of Illinois's Local Rule 56.1, which governs motions for summary judgment, requires a party's response to the moving party's statement of facts to "cite specific evidentiary material that controverts the fact" when disputing an asserted fact; asserted facts may be deemed admitted without such specific citations. L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Here, Kindybalyk frequently purports to dispute Merz's statements of fact without citing any evidentiary support for his position. On those occasions, consistent with Local Rule 56.1.(e)(3), the fact asserted by Merz will be deemed admitted so long as Merz himself has provided adequate evidentiary support as required by Local Rule 56.1(d)(2).

Dep. Ex. 7 at 73, Dkt. No. 45-4.) The engagement agreement sent to Wimmer contained a handwritten date, signature, and the printed name "Scott Kindy." (*Id.* ¶ 11.) Kindybalyk agrees that the signature looks like his own, though he cannot remember if he signed the engagement agreement or added the handwritten text. (Kindybalyk Dep. at 19:10–23.)

On February 9, 2018, Wimmer secured a loan from Monte Merz to New City Auto for $496,000. (PSMF ¶ 12, Dkt. No. 45.) In light of the loan, New City Auto executed a Promissory Note and a Loan and Security Agreement (together, "Loan Documents"). (*Id.*) The Loan Documents required the borrow to make the following payments:

- Repayment of the entire principal amount of $496,000 on April 15, 2018;
- Interest of $50,000 on April 15, 2018;
- Interest at the annual rate of 25% on the outstanding principal balance from the date of any payment default through the date of payment;
- Late payment charge of $100 per day from the 11th day after any payment was due through the date of payment; and
- All of the lender's costs of enforcement, including reasonable attorney's fees.

(*Id.* ¶ 3.) Kindybalyk denies that New City Auto executed the Loan Documents but again does not cite any evidence for his position.

Kindybalyk also executed an Guaranty Agreement ("Guaranty Agreement"), signing as "Scott Kindy," in which he personally guaranteed payment of all amounts due pursuant to the Loan Documents. (*Id.* ¶¶ 2, 13.) The Guaranty Agreement states:

> Guarantors unconditionally and absolutely guaranty to Lender, the full and prompt payment and performance by the Borrower of all of its obligations under and pursuant to the Loan Agreement, together with the full and prompt payment of any and all costs and expenses of and incidental to the enforcement of this Guaranty, including, without limitation, reasonable attorneys' fees.

3

(PSMF, Ex. 1, Affidavit of Monte M. Merz – Guaranty Agreement at 24, Dkt. No. 45-1.) Though Kindybalyk admitted in interrogatory responses that from time to time he used the nickname "Scott Kindy" and that he signed the Guaranty Agreement directly above the printed name "Scott Kindy" (PSMF, Ex. 3, Def.'s Answers to First Set of Interrogatories at 2, Dkt. No. 45-3), in his Response to Plaintiff's Statement of Facts, Kindybalyk denies having signed the Guaranty Agreement. (*Id.* ¶ 2.) He again cites no evidence to support his assertion.

Despite the April 15, 2018 deadline for repayment of Merz's loan, no payments have been made pursuant to the Loan Documents. (*Id.* ¶ 4.) According to Merz, he has incurred attorney's fees and litigation expenses in seeking to enforce the Loan Documents. (*Id.* ¶ 15.)

In addition to other evidence relied on by the parties, in support of summary judgment Merz has submitted an affidavit from Wimmer, which is the subject of Kindybalyk's motion to strike. The affidavit states that Wimmer was the Managing Director of PSP, which is in the business of management consulting and capital advisory services. (PSMF, Ex. 5, Affidavit of Adam Wimmer at 1, Dkt. No. 45-5.) Merz relies on the affidavit to support his statement of fact that Kindybalyk, upon meeting Wimmer, introduced himself as "Scott Kindy." (*Id.*) Specifically, Wimmer states in the affidavit that he attended a portion of Kindybalyk's deposition for this case where he was able to identify Kindybalyk as the man who introduced himself to Wimmer as "Scott Kindy." (*Id.*)

In his affidavit, Wimmer also states that he initially sent the engagement agreement between New City Auto and PSP to Kindybalyk without any handwriting on it. (*Id.* at 1–2.) According to Wimmer, Kindybalyk sent back the agreement with a handwritten date, handwritten signature, and handwritten printed name and title below the signature. Lastly, the affidavit states that Wimmer had the Loan Documents prepared with the name "Scott Kindy" for one of the two

4

guarantors because of the printed name and signature that appeared in the engagement letter between New City Auto and PSP. (*Id.* at 2.)

Kindybalyk has asked the Court to strike Wimmer's affidavit on the grounds that Wimmer should not have been present at Kindybalyk's deposition to make an eyewitness identification, Merz's counsel purportedly prevented Kindybalyk's counsel from cross-examining Wimmer about this identification at a deposition, and Wimmer is biased in favor of Merz. (*See* Dkt. No. 47.)

## DISCUSSION

### I. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the nonmovant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). While the Court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmovant, "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). Thus, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

#### A. Choice of Law

As an initial matter, the Court must determine the source of the applicable law. In their briefing, the parties both apply Illinois law. The Loan Documents and Guaranty Agreement,

however, suggest that this dispute should instead be governed by Indiana law. Yet at no point in the briefing do the parties address that their Agreements (and by extension this dispute) might be governed by Indiana law.[3]

"A federal court exercising its diversity jurisdiction over state-law claims applies the choice-of-law rules of the state in which it sits." *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021). Therefore, Illinois choice-of-law rules govern this analysis. Illinois law states that an express choice-of-law provision in a contract will be given effect so long as (1) it does not contravene a fundamental public policy of Illinois, and (2) the state chosen bears a reasonable relationship to the parties or the transaction. *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 948 (N.D. Ill. 2006). However, choice of law "may be waived . . . if a party fails to assert it." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). And "[w]hen no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law." *Id.* Accordingly, because the parties here have failed to mention Indiana law, let alone argue that it governs this dispute, the Court applies Illinois law.

### B. Breach of Guaranty

Merz claims that Kindybalyk personally guaranteed payment of all amounts due in connection with New City Auto's loan, and no payments have been made. "A guaranty agreement is a contract to pay the debt of another[.]" *Rep. Bank of Chi. v. 1st Advantage Bank*, 999 N.E.2d 9,

---

[3] The Guaranty Agreement states that "Guarantors agree[] that this Guaranty shall be deemed a contract made under and pursuant to the laws of the State of Indiana and shall be governed by and construed under the laws of such state . . . ." (Affidavit of Monte M. Merz – Agreement of Personal Guarantee at 24.) The Loan and Security Agreement provides much the same. (*See* PSMF, Ex. 1, Affidavit of Monte M. Merz – Loan and Security Agreement at 9, Dkt. No. 45-1 ("This Agreement shall be governed by and construed in accordance with the laws and the State of Indiana.")). Though New City Auto's Promissory Note wavers as to which state's law applies—Illinois or Indiana—the document does expressly state that the note "shall be construed and enforced in accordance with and governed by the laws of the State of Indiana in Lake County." (PSMF, Ex. 1, Affidavit of Monte M. Merz –Promissory Note at 19, Dkt. No. 45-1.)

16 (Ill. App. Ct. 2013). Guaranty agreements are "construed according to general contract principles." *Amos Fin., LLC v. Szydlowski*, — N.E.3d —, WL 3036806, at *6 (Ill. App. Ct. Aug. 2, 2022). To establish a breach of guaranty under Illinois law, the plaintiff must show proof "(1) whether a contract existed; (2) whether the contract was breached; and (3) whether the guaranty also was breached." *Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2010 WL 3385534, at *2 (N.D. Ill. Aug. 19, 2010); *see also TCFIF Inventory Fin., Inc. v. Appliance Distributors, Inc.*, No. 12 C 332, 2014 WL 806961, at *6 (N.D. Ill. Feb. 28, 2014). The breach of contract inquiry necessarily asks whether the plaintiff has suffered damages. *Bank of Montreal*, 2010 WL 3385534, at *3. It is worth noting that even though the Court will follow the parties' lead and apply Illinois law, the result would appear to be the same regardless of whether Indiana or Illinois law were applied.[4]

### 1. Whether a Contract Existed

While Kindybalyk does not directly dispute them, Merz has established all the elements of the existence of each contract: offer, mutual acceptance, reasonably certain terms, and consideration. *Vassell v. Presence St. Francis Hosp.*, 106 N.E.3d 398, 408 (Ill. App. Ct. 2018). As discussed in more detail below, Kindybalyk's denial in his response to Merz's Rule 56.1 statement of facts that the Loan Documents were executed is accompanied by no supporting

---

[4] The elements of a breach of guaranty claim under Illinois law closely resemble the elements for the same claim under Indiana law. In Indiana, a plaintiff must show "(1) the existence of a guaranty contract; (2) breach of the guaranty; and (3) damages." *Stough Assocs., L.P. v. Hage*, No. 119CV01970DLPJPH, 2020 WL 551114, at *5 (S.D. Ind. Feb. 4, 2020) (applying Indiana law). While the elements under Illinois law require showing a breach of the underlying contract, that threshold step is not at issue here because it is undisputed that no payments have been made on the underlying contract. Moreover, breach of an underlying contract is part and parcel of an action for breach of guaranty in either state. *See id.* ("Under Indiana law, a guaranty is an independent contract to assume liability for performance of a duty or payment of a debt ***if the primary obligor defaults in performance or payment***." (emphasis added)). Likewise, under Illinois law, that damages are required to be proven for the underlying breach of contract incorporates damages into the guaranty claim's elements. *Bank of Montreal*, 2010 WL 3385534, at *2–3.

evidence. And Kindybalyk has already admitted in his own verified interrogatory responses that he signed the Guaranty Agreement.

The Guaranty Agreement and Loan Documents are also reasonably definite and certain as to their terms. The Guaranty Agreement indicates who the lender is (Merz), what the loan agreement is (Loan and Security Agreement), who the borrower is (New City Auto), who the guarantors are (Helmstetter and "Scott Kindy"), what they are agreeing to (to guarantee "the full and prompt payment and performance by the Borrower of all its obligations under and pursuant to the Loan Agreement, together with the full and prompt payment"), and for how long ("until the Loan is performed in full"). (Affidavit of Monte M. Merz – Guaranty Agreement at 24.) The Loan Documents contain definite and certain terms as well. They indicate who the lender is (Merz), who the borrower is (New City Auto), the maturity date (April 15, 2018), how much money is being loaned ($496,000), the amount of interest on the unpaid principal balance on the maturity date ($50,000, or 25% interest per year), what the late payment amounts are ($100 per day), and other costs the borrower may owe (reasonable attorney's fees). (Loan and Security Agreement at 3–14.)

Finally, Merz has proved consideration for the guaranty. "[I]f a guaranty is executed contemporaneously with the original contract, the consideration for the original contract is sufficient consideration for the guaranty and no new consideration is required for the guaranty." *L.D.S., LLC v. S. Cross Food, Ltd.*, 954 N.E.2d 696, 709 (collecting cases). This applies when all documents are part of a single transaction, even if the guaranty is executed days later. *See id.* at 709–10 (finding no need for independent consideration when "the lease and the guaranty were executed contemporaneously as part of a single 'lease transaction,' despite the fact that the guaranty was executed six days after the execution of the lease"). The Loan and Security

8

Agreement itself refers to "this Agreement, the Note, [and] the Guarantees," such that it is clear the parties were operating with the understanding that a guaranty would follow. (Loan and Security Agreement at 4.) The document also defines "Guarantees" as "the unconditional guaranty of payment of the Obligations of Michael Helmstetter and Scott Kindy." (*Id.*) The consideration used to support the original contract thus serves as consideration for the guaranty.

With a meeting of the minds evidenced by way of signatories, definite and certain terms, and consideration, Merz has proven the existence of a guaranty to satisfy the first element of a breach of guaranty claim.

In his response to the summary judgment motion, Kindybalyk claims that Merz has not met his burden of establishing that Kindybalyk is bound by the guaranty contract. But while Kindybalyk denies that the underlying Loan Documents were executed, he offers no evidence in support of his denial. (*See* DRPSF ¶ 1.) And Kindybalyk's protestations are undermined by his frank admission in written interrogatories that he did, in fact, sign the Guaranty Agreement. (PSMF, Ex. 3, Def.'s Answers to First Set of Interrogatories at 2.) Kindybalyk could not have signed a Guaranty Agreement that did not exist, and the existence of the Guaranty Agreement relies on an underlying agreement that it protects. That alone is sufficient to establish that the Loan Documents and Guaranty Agreement exist, and that Kindybalyk is bound by the Guaranty Agreement. Nevertheless, the Court addresses Kindybalyk's three arguments that he is not bound by the Guaranty Agreement: that the Court is barred by the Statute of Frauds from inquiring into the admitted legitimacy of his signature; that the Loan Documents are uncertain as to the loan's interest rate, allegedly evidencing that there was no meeting of the minds; and that the Guaranty Agreement was impermissibly entered into before the Loan and Security Agreement, thus voiding it.

9

### a. *Statute of Frauds*

Kindybalyk spends much of his response arguing that Merz cannot prove the existence of a guaranty contract because Merz has not shown that "Scott Kindy"—the individual who signed the Guaranty Agreement—is in fact Kindybalyk. Given that Kindybalyk has already admitted that he is the one who signed the contract, this argument is not well-taken. Nevertheless, according to Kindybalyk, the Statute of Frauds prevents Merz from relying on extrinsic evidence to show that Kindybalyk and "Scott Kindy" are one and the same person. Kindybalyk's Statute of Frauds argument constitutes an affirmative defense. *Goldwater v. Greenberg*, 95 N.E.3d 1237, 1241 (Ill. App. Ct. 2017). Even if it is established that the Statute of Frauds applies—which, as explained below, it does not—that only renders the contract voidable, not void. *Id.*

The Illinois Statute of Frauds provides as follows:

> That no action shall be brought . . . whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person . . . , unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith . . . .

740 ILCS 80/1.[5] In effect, to assert a claim against an individual for the default of another's debt, a promise must have already existed in writing, signed by the individual against whom the claim is brought. In this way, the Statute of Frauds determines **enforceability**, not validity. *Goldwater*,

---

[5] The Indiana Statute of Frauds is substantively equivalent:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent: . . . An action charging any person, upon any special promise, to answer for the debt, default, or miscarriage of another.

Ind. Code § 32-21-1-1(b).

95 N.E.3d at 1241 (explaining that "the contract may be enforced unless the defendant raises the statute of frauds as a defense").

The Statute of Frauds simply does not apply here. True, the Statute of Frauds may apply to oral guaranty contracts. *Rosewood Care Ctr., Inc. v. Caterpillar, Inc.*, 877 N.E.2d 1091, 1096 (Ill. 2007). But this is not an oral contract, and Kindybalyk does not even appear to argue that it is one. Kindybalyk also does not address that he has already admitted that the Guaranty Agreement is a signed writing that satisfies the Statute of Frauds. *See Greenberger, Krauss & Tenenbaum v. Catalfo*, 687 N.E.2d 153, 158 (Ill. App. Ct. 1997). Instead, he conflates oral guaranty contracts to which the Statute of Frauds *might* apply with all guaranty contracts, written or not, arguing that because this is a guaranty contract the Court is barred—in any situation—from examining evidence outside the four corners of the contract. This is incorrect. *See, e.g.*, *State Bank of E. Moline v. Cirivello*, 386 N.E.2d 43, 45–46 (Ill. 1978) ("The trial court properly ruled that the parol evidence rule did not bar the use of extrinsic evidence for the purpose of establishing that the signed guaranty, without the signatures of all the limited partners, was an incomplete instrument and never took effect."). But more to the point, it is irrelevant. Kindybalyk seeks to exclude evidence outside the four corners of the Guaranty Agreement not to dispute its terms but rather to dispute whether he signed the agreement that he has already admitted he signed. Whether the Guaranty Agreement is a signed writing is a threshold question for whether the Statute of Frauds applies, not an actual application of the Statute of Frauds. And Kindybalyk has already confirmed that it is a written contract that he signed.

### b. Rate of Interest

Kindybalyk further attempts to counter Merz's showing of the existence of a guaranty by arguing that terms in the Loan Documents—namely, the rate of interest that will accrue on the

outstanding principal balance—are too uncertain. Specifically, Kindybalyk claims that the Loan and Security Agreement contains blanks, or spaces that have not been filled in by the parties, with respect to yearly interest rate. (Loan and Security Agreement at 5.). Meanwhile, the Promissory Note specifies a 25% yearly interest rate. (Promissory Note at 19.) According to Kindybalyk, this discrepancy alone demonstrates that there was no meeting of the minds.

"'[F]or a valid contract to be formed, an offer must be so definite as to its material terms . . . that the promises and performances to be rendered by each party are reasonably certain.'" *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.*, 547 F.3d 882, 888 (7th Cir. 2008) (quoting *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991)). Here, Merz has demonstrated reasonable certainty within the terms of the Loan Documents. Both Loan Documents state that the borrower shall pay interest in the amount of $50,000 on the principal balance outstanding on the maturity date. (Promissory Note at 19; Loan and Security Agreement at 5.) And although the Loan and Security Agreement contains a blank as to the rate of interest, the Promissory Note fills in this gap, clarifying that the interest rate once the maturity date has passed becomes 25% per year. (Promissory Note at 15.) Thus, the Loan Documents together provide reasonable certainty as to the important loan terms. *See, e.g.*, *Ins. Benefit Grp. v. Guarantee Tr. Life Ins. Co.*, 91 N.E.3d 950, 960 (Ill. App. Ct. 2017) ("In construing a contract, the primary objective is to give effect to the intention of the parties." (internal quotation marks omitted)); *Bliss v. Rhodes*, 384 N.E.2d 512, 515 (Ill. App. Ct. 1978) (finding no fatal deficiency in a real estate contract that contained a blank space for the escrow agent because "the intention of the parties . . . is ascertainable"); *cf. Hutcheson v. Herron*, 266 N.E.2d 445, 413 (Ill. App. Ct. 1970) ("When a person signs and executes a form instrument without filling in all the blanks, the

person by implication authorizes a holder of the instrument to fill in the empty blanks in accordance with an underlying agreement.").

Because the blank space for the interest rate in the Loan and Security Agreement can be clarified by the contemporaneous Promissory Note, Kindybalyk's argument regarding interest rates fails.

### c. Order of Loan Documents and Guaranty Agreement

In his final argument against the existence of a guaranty, Kindybalyk contends that the Guaranty Agreement is unenforceable because the Loan and Security Agreement had conditions precedent that were not satisfied. In particular, Kindybalyk points to the condition precedent that Scott Kindy provide an acceptable form of guarantee. (Loan and Security Agreement at 9.) In light of this provision, Kindybalyk argues that there could be no meeting of the minds because the guaranty came before the loan was funded.

The Loan and Security Agreement and the Guaranty Agreement were signed only one day apart, with the former preceding the latter. (*See* Loan and Security Agreement at 3; Guaranty Agreement at 24.) And Merz has established that Kindybalyk knew the terms of the Loan and Security Agreement by the time he signed the Guaranty Agreement because the Loan and Security Agreement states that he had an unconditional guaranty of payment of obligation (Loan and Security Agreement at 4), and the two documents were attached to one another (*See* DRPSF ¶ 2). Accortdingly, the order in which the Loan Documents and the Guaranty Agreement were created does not raise issues of enforceability. *See L.D.S., LLC*, 954 N.E.2d at 709 (collecting cases and finding that even when a guaranty was executed six days after the underlying agreements, it was still a valid contract because its terms were known at the time the initial agreement was signed). Merz has offered undisputed evidence that Kindybylak had access to all

13

the agreements at the same time, a fact which Kindybylak denies but for which he offers no evidence to the contrary. (DRPSF ¶¶ 1–2.) To the extent Kindybalyk argues that the order of signing caused a condition precedent to fail—that the Guaranty Agreement had to be signed before any of the Loan Documents—his argument is unavailing.

### 2. Breach of Contract and Breach of Guaranty

To prevail on his claim against Kindybalyk, Merz also must establish that both the underlying contract and the guaranty were breached. "To succeed on a claim for breach of contract, a plaintiff must plead and prove (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." *Bank of Montreal*, 2010 WL 3385534, at *3 (internal quotation marks omitted). As discussed above, Merz has established the existence of all contracts at issue. He has also established performance on his part in the form of a $496,000 loan. (*See* DRPSF ¶ 1.) As to breach, the undisputed facts establish that no payments have been made pursuant to the Loan Documents or the Guaranty Agreement. (*See* DRPSF ¶ 4.) Though Kindybalyk denies that is the case, he does not offer any evidence to rebut it. (*Id.*) As a result, the parties do not have a material dispute over the issue of nonpayment, which constitutes a breach of the Loan Documents.

As to the Guaranty Agreement, in particular, "a suit on a guarantee requires that the plaintiff 'enter[] proof of the original indebtedness, the debtor's default and the guarantee.'" *Bank of Montreal*, 2010 WL 3385534, at *3 (quoting *Mid-Indus. Supply Co. v. Horwitz*, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985)). The Loan Documents and Guaranty Agreement require Kindybalyk to guarantee "the full and prompt payment and performance by the Borrower of all of its obligations under and pursuant to the Loan Agreement, together with the full and prompt payment of any and all costs and expenses incidental to the enforcement of this Guaranty"

(Guaranty Agreement at 24), and there is no material dispute that no payments have been made as to the loan. As the guarantor, Kindybalyk bore responsibility for ensuring payment. As such, Merz has proven a breach of both contracts—the underlying agreement to repay the loan and Kindybylak's agreement to guarantee that payment.

### 3. Damages

In support of his motion for summary judgment, Merz offers his own testimony that no payments of any amounts due under the Loan Documents have been made. (DRPSF ¶ 4.) He also walks through the damages he has incurred as a result of Kindybalyk's breach of the Guaranty Agreement. (*See id.* ¶¶ 14–15.) Specifically, Merz states that "[t]he amount due pursuant to the Promissory Note and the Loan and Security Agreement as of May 5, 2021 was $925,134.25," with interest accruing at $339.73 per day from May 6, 2021 until the date of an entry of judgment by this Court. (*Id.* ¶ 14.) He calculates this amount of damages based on the principal amount due; the interest to April 15, 2018; the interest at 25% per annum on the loan amount from April 15, 2019 through the next year; the interest at 25% per annum on the loan amount from April 15, 2020 through the next year; the interest at 25% per annum on the loan amount from April 15, 2021 through May 5, 2021; and the per diem interest from May 6, 2021 through the date of entry of judgment. (*Id.*)

Merz further claims, by referencing to his attorney's supporting affidavit, that he has incurred attorney's fees and litigation expenses in connection with this case. (*Id.* ¶ 15.) Attorney's fees and litigation expenses are included as damages because the Loan Documents provide for recovery of costs of enforcement.[6] Under Illinois law, attorney's fees are available "where the

---

[6] Kindybylak denies this but again does not offer any evidence refuting it. (DRPSF ¶ 3.) On the other hand, the Promissory Note expressly provides for damages in the form of "reasonable costs of collecting or attempting to collect this note," (Promissory Note at 18), and the Guaranty Agreement provides for "reasonable attorneys' fees." (Guaranty Agreement at 24.)

15

parties have contracted for an award of fees." *One Way Apostolic Church v. Extra Space Storage, Inc.*, No. 16 C 1132, 2019 WL 10892090, at *3 (N.D. Ill. Mar. 25, 2019). Kindybalyk denies each assertion of damages and relief but offers no evidence to support his position.

To thwart Merz's proof of damages, Kindybalyk asserts that Merz's request for attorney's fees fails to comply with Federal Rule of Civil Procedure 56(c). As an initial matter, regardless of whether he is entitled to attorneys' fees as damages under the Guaranty Agreement, Merz has established that he suffered damages due to the lack of repayment of the amount due on the loan and the accruing interest on that amount. So even if Merz had not also established damages in the form of attorneys' fees, he would still be entitled to summary judgment on the merits of his breach of guaranty claim.

Regardless, the undisputed evidence establishes that Merz is entitled to damages in the form of the "reasonable costs of collecting or attempting to collect [the Promissory Note]" (Promissory Note at 18), and "reasonable attorneys' fees" incidental to the enforcement of the Guaranty Agreement. (Guaranty Agreement at 24.) The unrebutted affidavit submitted by Merz's attorney establishes that such attorneys' fees have been incurred. Kindybalyk nonetheless faults Merz for failing to identify billing statements or receipts for his attorney's fees, which Kindybalyk claims renders Merz's statements conclusory and lacking in probative value as to damages. But Federal Rule of Civil Procedure 54(d)(2)(C) specifically provides that "the court may decide issues of liability for fees *before* receiving submissions on the value of services." Thus, Merz is not required to establish the exact amount of attorneys' fees to which he is entitled before he establishes that he is entitled to attorneys' fees at all.

The Court further notes that the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois provide for the filing of a fee petition after judgment on the merits

16

has entered as to the party's claims. *See* Fed. R. Civ. P. 54(d)(2); N.D. Ill. Local Rule 54.3. Consistent with the practice of the Court and the Federal Rules of Civil procedure, Merz will be permitted to file a fee motion and the Court will determine the amount of attorney's fees owed by Kindybalyk at a later date pursuant to the procedures under Local Rule 54.3. *See One Way Apostolic Church*, 2019 WL 10892090, at *3–4 (evaluating contractual attorney's fees in response to a post-judgment motion under Fed. R. Civ. P. 54(d)); *Tarau v. Coltea*, No. 15-CV-03545, 2017 WL 467682, at *2 (favoring post-judgment award of contractual attorney's fees so that "all claimed fees can be assessed for reasonableness"). No more specificity as to the amount of attorneys' fees is needed at this time for Merz to satisfy his showing of damages.

In short, the undisputed facts establish the third and final element for a claim of breach of guaranty—*i.e.*, damages. As the undisputed record establishes each of the elements of a claim for breach of guaranty, Merz's motion for summary judgment as to Kindybalyk is granted.

### II. Motion to Strike Wimmer's Affidavit

While it does not affect the outcome, the Court also briefly addresses Kindybalyk's motion to strike Wimmer's affidavit identifying Kindybalyk as "Scott Kindy." To be clear, the Court has found in favor of Merz at the summary judgment stage without relying on Wimmer's affidavit. However, in the interest of completeness, the Court will briefly address the merits of Kindybalyk's motion.

In ruling on motions for summary judgment, courts must only consider facts and evidence admissible at trial. *Maher v. Rowen Grp., Inc.*, No. 12 C 7169, 2015 WL 273315, at *1 (N.D. Ill. Jan. 20, 2015); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on

17

the matters stated.") District courts have broad discretion in determining the admissibility of evidence. *Jackson Nat. Life Ins. Co. v. Schultz*, No. 01 C 641, 2002 WL 1677692, at *4 (N.D. Ill. July 22, 2002). "In examining affidavits, [courts] will strike only portions that are 'clearly irrelevant, redundant, impertinent and prejudicial,' so that [they] can retain the appropriate context in which to consider [] claims and defenses . . . ." *Maher*, 2015 WL 273315, at *1.

Kindybalyk contends that Wimmer's affidavit should be stricken because of the manner in which the testimony was obtained. Specifically, Kindybalyk claims that Merz's counsel violated Federal Rule of Evidence 615 by having Wimmer present at Kindybalyk's deposition so that he could make an eyewitness identification of Kindybalyk. But the Court finds no Rule 615 issue here. Rather than Federal Rule of Evidence 615, which applies to trial testimony, a party must invoke Federal Rule of Civil Procedure 26(c) to bar an individual from attending a deposition. Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . designating the persons who may be present while the discovery is conducted . . . ."). Kindybalyk did not seek a protective order to bar Wimmer from attending his deposition. Regardless, the parties agreed during Kindybalyk's deposition to remove Wimmer. As a result, Wimmer did not hear any deposition testimony, nor was he specifically forbidden by the Court from attending depositions.

Kindybalyk's next argument—that Merz prevented him from deposing Wimmer and cross-examining his eyewitness identification—is also flawed. Kindybalyk alleges that Merz provided limited information on Wimmer in his Initial Disclosures but, in fact, Merz disclosed Wimmer as an individual with relevant information and provided his email address and phone number. (Mot. to Strike Affidavit, Ex. A, Pl.'s Mandatory Initial Discovery Resp. at 2–3, Dkt. No.

18

47-1.) Kindybalyk could have contacted Wimmer using that information but provides no indication that he attempted to do so. Further, though Merz scheduled and subsequently cancelled Wimmer's deposition, Kindybalyk does not appear to have taken any steps to issue his own third-party deposition subpoena or otherwise to secure deposition testimony from Wimmer.

That said, Wimmer's presence at Kindybalyk's deposition does appear to have been contrived for the purpose of a third-party identification. "[P]retrial depositions and interrogatories are not public components of a civil trial" nor were they open to the public at common law. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Given the expectation that only the parties and their counsel will attend depositions, Wimmer's attendance at Kindybalyk's deposition was likely unanticipated and caught Kindybalyk's counsel off guard. Though the parties agreed to remove Wimmer after his presence was noted, he had already identified Kindybalyk, and the later cancellation of Wimmer's deposition made cross-examination of him over this issue that much more difficult.

In the end, however, the only relief Kindybalyk seeks with his motion is to have the Wimmer affidavit stricken such the Court would not be able to consider it in connection with Merz's motion for summary judgment. As it turns out, the Court need not consider the affidavit at all because, even without it, the undisputed facts establish that Merz is entitled to judgment as a matter of law against Kindybalyk. Accordingly, Kindybalyk's motion to strike is denied as moot.

## CONCLUSION

For the reasons stated above, Plaintiff Merz's motion for summary judgment against Defendant Kindybalyk (Dkt. No. 43) is granted. Defendant Kindybalyk's motion to strike Wimmer's affidavit (Dkt. No. 47) is denied as moot. Judgment will be entered in favor of Merz in the principal amount of $496,000, plus accrued interest and attorneys' fees and costs. Pursuant to

Federal Rule of Civil Procedure 54(b) and Local Rule 54.3, Merz will be provided an opportunity to submit a separate motion setting out the basis and amount of attorneys' fees and expenses to which he is entitled.

ENTERED:

Dated: January 12, 2023

_____
Andrea R. Wood
United States District Judge